**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRAVIS WILLIAM SUITER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of the Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) <br> _____) | NO. CV 10-05430 SS <br><br><br><br> **MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Travis William Suiter ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") to deny his application for Supplemental Security Income ("SSI") Benefits, and requests this Court remand this matter for further review.

//

The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Commissioner is REVERSED and the case is REMANDED for further proceedings consistent with this decision.

**II.**

**PROCEDURAL HISTORY**

Plaintiff applied for Title XVI SSI Benefits and Title II Social Security Disability Insurance ("SSDI") Benefits on April 10, 2007, claiming disability since December 31, 2003. (Administrative Record ("AR") 107-12, 113-14). The Agency initially denied both claims on August 31, 2007. (AR 60-61, 64-68). Plaintiff requested reconsideration on September 24, 2007. (AR 69). The Agency denied his application again on December 10, 2007. (AR 62-63, 70-79). Thereafter, Plaintiff filed a Request For Hearing By Administrative Law Judge on January 29, 2008. (AR 80-81).

The Agency scheduled a hearing for October 21, 2008, wherein Plaintiff testified before an Administrative Law Judge ("ALJ") in Los Angeles, California. (AR 22-40, 86-95). The hearing was ultimately continued to January 13, 2009 to give Plaintiff time to provide the Agency with more records of his most recent medical treatment. (AR 22-40, 41-59). At the January 13, 2009 hearing Plaintiff again testified before the ALJ. (AR 41-59). Sandra Schneider, a vocational expert also

testified at this hearing. (Id.). At the October 21, 2008 and January 13, 2009 hearings, Plaintiff was represented by the Law Offices of Bill LaTour. (AR 22-40, 41-59, 82-83). The ALJ denied Plaintiff's application for benefits on September 8, 2009. (AR 9-21). On November 12, 2009, Plaintiff requested review of the ALJ's decision. (AR 6-8). On May 18, 2010, the Agency denied Plaintiff's request, (AR 1-3), and Plaintiff commenced this action on July 22, 2010.

## III.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. See 20 C.F.R. §§ 404.1510, 416.910.

3

1     (1)  Is the claimant presently engaged in substantial gainful
2          activity?  If so, the claimant is found not disabled.  If
3          not, proceed to step two.
4     (2)  Is the claimant's impairment severe?  If not, the
5          claimant is found not disabled.  If so, proceed to step
6          three.
7     (3)  Does the claimant's impairment meet or equal one of the
8          specific impairments described in 20 C.F.R. Part 404,
9          Subpart P, Appendix 1?  If so, the claimant is found
10         disabled.  If not, proceed to step four.
11    (4)  Is the claimant capable of performing his past work?  If
12         so, the claimant is found not disabled.  If not, proceed
13         to step five.
14    (5)  Is the claimant able to do any other work?  If not, the
15         claimant is found disabled.  If so, the claimant is found
16         not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing

an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity[2] ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**IV.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing

---

[2] Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

5

Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**V.**

**DISCUSSION**

Plaintiff contends the ALJ erred in three respects in his decision to deny benefits. (Plaintiff's Memorandum at 2, 7, 10). First, Plaintiff argues the ALJ improperly rejected the opinion of a treating physician. (Id. at 2-7). Second, Plaintiff argues the ALJ erred in his assessment of Plaintiff's credibility. (Id. at 7-10). Finally, Plaintiff argues the ALJ failed to consider all of Plaintiff's

impairments when determining Plaintiff's Residual Functional Capacity ("RFC"). (Id. at 10-14).

The Court agrees that remand is necessary. The Court also finds the ALJ erred in one additional respect, i.e., by finding that Plaintiff's depression was "non-severe" at step-two of the evaluation process. For the reasons discussed below, the Court finds that the ALJ's decision should be reversed and this action remanded for further proceedings.

**A. The ALJ Improperly Rejected The Medical Opinions Of The Treating Physician**

Plaintiff contends that the ALJ did not give proper weight to the opinion of Plaintiff's treating physician, Dr. Mehri McKellar ("Dr. McKellar"). (Plaintiff's Memorandum at 2-7). Specifically, Plaintiff argues that the ALJ ignored the portions of Dr. McKellar's treatment records that document the diagnosis and treatment of Plaintiff's chronic headaches, and failed to give "specific and legitimate" reasons for doing so. (Id.). The Court agrees.

Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific,

legitimate reasons, supported by substantial evidence in the record. Id. The opinions of treating physicians are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

Here, the ALJ improperly disregarded Dr. McKellar's opinion regarding the severity of Plaintiff's headaches. In the November 7, 2007 HIV Questionnaire used to evaluate Plaintiff's ability to function with respect to his HIV status, Dr. McKellar opined that Plaintiff's chronic headaches and depression were contributing factors that explained why Plaintiff appeared chronically ill and visibly fatigued. (AR 156). In this same Questionnaire, Dr. McKellar described Plaintiff's headaches as "ongoing" and as his "biggest problem." (AR 156-57). Additionally, Dr. McKellar observed Plaintiff's depression and anxiety were indications that Plaintiff suffered from a mental impairment. (AR 157). On November 21, 2007, Dr. McKellar found that Plaintiff suffered from "chronic headaches," and ordered lab work to be performed. (AR 306). On April 17, 2008, Dr. McKellar again offered her opinion regarding Plaintiff's headaches in the form of a letter, in which she asked the ALJ to excuse Plaintiff from attendance at a court date in January 2008 due to his "chronic headaches and fatigue." (AR 346). Moreover, the record supports Dr. McKellar's opinions regarding Plaintiff's headaches and depression, as the record shows that Plaintiff was consistently prescribed Midrin and Ibuprofen for headaches, (AR 294, 296, 301, 307, 312), and Wellbutrin for depression. (AR 299, 307).

Instead of addressing Dr. McKellar's opinions regarding Plaintiff's headaches and depression, the ALJ focused exclusively on Dr. McKellar's functional capacity assessment. (AR 19). The ALJ failed to provide any reasons for omitting Dr. McKellar's assessments regarding Plaintiff's headaches and depression. Such selective treatment of the treating doctor's opinions is improper in the absence of "clear and convincing reasons" for doing so. See Lester 81 F.3d at 830. Accordingly, on remand, the ALJ shall consider and address Dr. McKellar's opinions regarding Plaintiff's headaches and depression when conducting the disability analysis, as well as any other evidence relevant to Plaintiff's mental impairments and pain.

**B.   The ALJ Failed To Provide Clear And Convincing Reasons For Rejecting Plaintiff's Credibility**

The Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's credibility. (Plaintiff's Memorandum at 7-10). This Court agrees.

Whenever an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, as it is here, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (implicit finding that claimant was not credible is insufficient). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony

must be "clear and convincing." Lester, 81 F.3d at 834. As long as the plaintiff offers evidence of a medical impairment that could reasonably be expected to produce pain, the ALJ may not require the degree of pain to be corroborated by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc); Smolen, 80 F.3d at 1282.

The ALJ can, however, reject plaintiff's testimony regarding the severity of her symptoms if he points to clear and convincing reasons for doing so. See Smolen, 80 F.3d at 1283-84. To determine whether plaintiff's testimony regarding the severity of his symptoms is credible, the ALJ may consider, among other things, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284.

In making his credibility determination, the ALJ relied solely on selective portions of the evidence without considering the portions of the record that supported Plaintiff's testimony. This was erroneous. See Valentine v. Comm'r of the Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) ("The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."). The record indicates that Plaintiff consistently sought treatment for the illnesses relevant to his disability claim. (See AR

241-51, 293, 296, 298, 301-02, 304, 306-07, 309, 313, 364, 408-09, 411). Plaintiff visited the Hollywood Healthcare Center seven times for HIV-related issues and other ailments between June 13, 2006 and December 20, 2007. (AR 241-51, 293-313). At several of these visits, Plaintiff reported that he suffered from headaches and depression. (AR 244, 293, 298, 304). As a result, Plaintiff was prescribed Midrin and Ibuprofen for his headaches, and Amitryptyline and Wellbutrin for his depression. (AR 304-13). Thus, Plaintiff's treatment records support Plaintiff's subjective complaints of headache pain and mental impairment.

The ALJ specifically discounted Plaintiff's credibility because the "intensity, persistence and limiting effects" of Plaintiff's symptoms were not supported by the objective medical evidence. (AR 17). The ALJ's decision lacks specificity, however, and it is unclear why the ALJ found that the medical evidence did not support the degree of pain and limitation that Plaintiff claimed. The record certainly reflects considerable medical treatment of Plaintiff, including treatment with prescription medications.

Defendant argues that the ALJ's credibility assessment was proper for two additional reasons. (Defendant's Memorandum at 5-6). First, Defendant argues the credibility assessment was proper because the ALJ based his assessment on Plaintiff's failure to follow prescribed treatment. (Id.). The ALJ based this assessment off of the Independent Internal Medicine Evaluation of a consultative examiner, dated June 27,

2007, which showed that Plaintiff was not taking medication for his HIV, and was only taking Wellbutrin. (AR 18, 262-67). However, the ALJ failed to take into account that the same evaluation noted that his other medications were "stopped secondary to side effects." (AR 262).

Second, Defendant argues the ALJ's assessment was proper because Plaintiff often failed to report any symptoms to healthcare providers. (Defendant's Memorandum at 6). Defendant points out that many of the office visit notes documenting Plaintiff's medical treatment showed that Plaintiff often did not specify any particular complaint, "which contrasted with his claim of ongoing, disabling symptoms." (Id. at 6). Defendant cites Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006), in which the court found that the claimant's failure to report symptoms during the relevant period was a clear and convincing reason to reject his subjective complaints. (Id.). However, Greger is distinguishable from this case, as the plaintiff in Greger "failed to report *any*" symptoms consistent with his alleged impairment, did not participate in any treatment for his alleged impairments, and admitted to participating in physical activities inconsistent with his alleged disabilities. Greger, 464 F.3d at 972 (emphasis added). In contrast, the record in this case reflects Plaintiff reported symptoms of his alleged impairments on many occasions, received treatment consistent with those alleged impairments, and did not participate in any physical activities inconsistent with his alleged disabilities. (AR 244, 248, 293, 304, 309, 389-412).

As there was no "affirmative evidence showing that [Plaintiff] was malingering," and because the ALJ failed to offer a clear and convincing reasons for rejecting Plaintiff's testimony, the ALJ's credibility assessment was improper. See Valentine, 574 F.3d at 693 (citations omitted). On remand, if the ALJ again rejects Plaintiff's credibility, the ALJ should specifically identify what evidence undermines the credibility of Plaintiff's specific complaints and how this evidence is supported by the record.

**C.  The ALJ Failed To Consider The Combined Effects Of Plaintiff's Impairments When Determining Plaintiff's RFC**

Plaintiff argues that the ALJ did not adequately consider all of Plaintiff's impairments when determining Plaintiff's RFC. (Plaintiff's Memorandum at 10-14). Specifically, the Plaintiff asserts the ALJ failed to incorporate the effect of Plaintiff's chronic headaches and pain into his RFC assessment. (Id. at 11-12). The Court agrees. Additionally, the ALJ failed to adequately incorporate the findings of Dr. Steven J. Brawer's Psychological Evaluation, dated November 7, 2007, into his RFC assessment.

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545). An RFC assessment requires the ALJ to consider a claimant's impairments and any related symptoms that may "cause physical

and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining a claimant's RFC, the ALJ considers all relevant evidence, including residual functional capacity assessments made by consultative examiners, State Agency physicians and medical experts. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). See also, 20 C.F.R. §§ 404.1513(c), 416.913(c). If a physician's RFC assessment is not contradicted by another physician, the ALJ must provide clear and convincing reasons for rejecting that opinion. Lester, 81 F.3d at 830 (as amended) ("[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician.").

"The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe. . . . Even though a non-severe impairment[] standing alone may not significantly limit an individual's ability to do basic work activities, it may - when considered with limitations or restrictions due to other impairments - be critical to the outcome of a claim." Carmickle v. Comm'r of the Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Social Security Ruling 96-8p (1996))(internal quotation marks omitted) (citations omitted).

Here, the functional limitations contained within the ALJ's RFC do not adequately address all of Plaintiff's limitations. The ALJ's RFC only contains restrictions on Plaintiff's ability to twist, stoop, crouch, climb and be exposed to "humidity or respiratory irritants." (AR

14

16). Although these limitations are consistent with those impairments the ALJ determined to be "severe," these limitations do not adequately address the collective impact of Plaintiff's other limitations. In particular, the RFC does not account for Plaintiff's symptoms of headaches, fatigue, diarrhea, incontinence or depression. (AR 16). Nor does the ALJ's RFC analysis reference pain, which is a central issue in this case. The ALJ must "consider all the limitations imposed by the [Plaintiff's] impairments, even those that are not severe." Carmickle, 533 F.3d at 1164.

Furthermore, the ALJ improperly rejected the opinion of Dr. Brawer, an examining psychologist, who opined, "given [Plaintiff's] dysphoria and somatic complaints, [Plaintiff] may have difficulty sustaining motivation and stamina" and that, "[Plaintiff] may have mild limitations in sustaining cooperative relationships with coworkers and supervisors" due to his "dysphoria, irritability and preference for social isolation." (AR 284). As discussed in the next section, the ALJ's purported reason for disregarding Dr. Brawer's opinion is not supported by the record. Accordingly, the ALJ's failure to incorporate Dr. Brawer's opinion into the RFC was error.

Defendant argues that the ALJ properly rejected Plaintiff's subjective complaints because the Plaintiff failed to "explain how headaches treated with Ibuprofen, Mitrin, and chiropractics would have prevented him from doing a wide range of sedentary work." (Defendant's Memorandum at 8). Specifically, Defendant argues Plaintiff's

15

impairments were effectively controlled by medication, and were, thus, rightly excluded from the ALJ's RFC assessment. (Id.). In support of this proposition, Defendant cites <u>Warre v. Comm'r of the Soc. Sec. Admin.</u>, 439 F.3d 1001, 1006 (9th Cir. 2006) and <u>Odle v. Heckler</u>, 707 F.2d 439, 440 (9th Cir. 1983). (Id.). However, <u>Warre</u> and <u>Odle</u> are distinguishable from the present case because both decisions were based on the premise that the plaintiffs in those cases had <u>effectively controlled</u> their impairments with medication. In contrast, the record in the present case demonstrates Plaintiff's headaches were not effectively controlled by medication. Rather, Plaintiff was forced to seek chiropractic and other treatment to supplement the Ibuprofen and Midrin prescribed to treat his chronic headaches. (AR 390-412). Accordingly, the ALJ improperly disregarded Plaintiff's documented limitations and failed to consider the collective impact of those limitations on Plaintiff's RFC.

**D. The ALJ Erred By Finding That Plaintiff's Depression Was "Non-Severe" At Step-Two**

In addition to the grounds alleged by the Plaintiff, the Court also finds the ALJ erroneously found Plaintiff's depression "non-severe." As discussed previously, the ALJ dismissed Dr. Brawer's opinion that Plaintiff suffered from depression because the ALJ believed Dr. Brawer's opinion was based primarily on Plaintiff's subjective reports of "depressive symptoms and display of sad/somber affect." (AR 15). The ALJ reasoned that Plaintiff's depression was not severe because the

problems with Plaintiff's credibility undermined Dr. Brawer's diagnosis of depression. (Id.). This was an improper assessment of the entire record concerning Plaintiff's depression. The record reflects that Plaintiff reported symptoms of depression as early as June 13, 2006, (AR 241), received on-going treatment for depression, and eventually received prescriptions for two antidepressants, Amitryptyline, and Wellbutrin. (AR 304, 310). This evidence more than satisfies the "severe impairment" test at step two.

By its own terms, the evaluation at step two is a de minimis test intended to weed out the most minor of impairments. See Bowen v. Yuckert, 482 U.S. 137, 153-154, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001)(stating that the step two inquiry is a de minimis screening device to dispose of groundless claims) (quoting Smolen, 80 F.3d at 1290). An impairment is not severe only if the evidence establishes "a slight abnormality that has no more than a minimal effect on an individuals ability to work." Smolen, 80 F.3d at 1290 (internal quotations omitted) (internal citations omitted).

The ALJ here applied more than a de minimis test when he determined that Plaintiff's depression was not severe. The objective medical findings in the present case indicate that Plaintiff suffered from a severe mental health impairment. See 20 C.F.R. § 416.927(a)(2) ("Medical opinions . . . that reflect judgments about the nature and severity of [a plaintiff's] impairment(s), including symptoms, diagnosis

17

and prognosis," are evidence that a plaintiff may submit in support of his disability claim). The ALJ, however, failed to follow the Secretary's regulations for evaluating mental impairments. Accordingly, the ALJ must re-do the analysis at step-two and properly apply the agency's own regulations for evaluation of a severe mental impairment.

## VI.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this decision. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 28, 2011

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE